**JACOB J. WALLENDORF v. NEW YORK LIFE INSURANCE COMPANY, a New York corporation.**

12 So. (2nd) 585                      January Term, 1943

March 19, 1943                                    En Banc

*Moorehead & Pallot,* for petitioner.

*L. S. Julian, L. S. Bonsteel* and *Shutts, Bowen, Simmons, Prevatt* and *Julian,* for respondent.

PER CURIAM:

Certiorari denied.

So ordered.

TERRELL, THOMAS, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., BROWN and CHAPMAN, JJ., concur specially.

CHAPMAN, J., concurring specially:

This case originated in the Civil Court of Record of Dade County, Florida. The declaration consisted of a single count based on a policy of life insurance containing a clause to the effect that if the plaintiff became, before the age of sixty, permanently disabled from following any occupation or from engaging in any business for remuneration or profit, then under these conditions the insurance company, during the period of disability would pay the insured $53.86 per month. The declaration alleged that the plaintiff became permanently disabled by diseases viz: Addison's Syndrome an extreme nervous exhaustion with hypotension, and therefore entitled to receive from the insurance company the monthly disability payments enumerated in the policy.

The defendant company, by appropriate pleas, denied that plaintiff's disability was caused by the diseases alleged, and testimony was offered in support of the issues tendered. There was a verdict for the defendant below, and on appeal

was affirmed by the Circuit Court of Dade County, Florida, and the case comes to this Court on petition for writ of certiorari. Oral argument was waived by counsel, but the contentions of the respective parties are clearly presented by well prepared and exhaustive briefs.

One of the contentions presented is that certain designated instructions given by the trial court were prejudicial to the plaintiff below, in that the burden of proof thereby placed on the plaintiff was greater than authorized by our applicable decisions. One of the challenged instructions is viz:

"You are further instructed that under the terms of the policy involved in this action, a recognition of total and permanent disability by paying disability benefits for several months, or even for several years, does not obligate the defendant to continue such payments indefinitely and no presumption of total, permanent disability results from such payments, but the plaintiff, as you have previously been instructed, has the burden of proving by a preponderance of the evidence that he has been and continues *to be totally and permanently disabled so as to be prevented from following any gainful occupation.* It is not enough for him to show that he cannot perform heavy manual labor involving the exercise of great strength, and unless you find from a preponderance of the evidence that, as the result of the disease described in the declaration, *he is totally and permanently disabled from performing a gainful occupation, you must find for the defendant."*

It is contended that the jury concluded that it was incumbent on the plaintiff under this instruction to establish by a preponderance of the evidence that the plaintiff was totally disabled from performing any occupation whatsoever, rather than that the plaintiff was prevented from performing any of the material portions of his usual occupation, or any occupation for which he was fitted by his education, training and experience. The cases of Equitable Life Assur. Soc. of U. S. v. Wiggins, 115 Fla. 136, 155 So. 327; New York Life Ins. Co. v. Lecks, 122 Fla. 127, 165 So. 50; Franklin Life Ins. Co. v. Tharpe, 130 Fla. 546, 178 So. 300; New England Mut.

Life Ins. Co. v. Huckins, 127 Fla. 540, 173 So. 696, and cases from other jurisdictions, are cited and relied upon.

The disability clause in the case of New York Life Ins. Co. v. Lecks, *supra* (text 122 Fla. 132), was similar to the one involved in the instant case, and this Court said:

"The phrase, 'wholly and presumably permanent disabled' means total disability, which the policy defines to be such injury or disease as will prevent one so affected 'from engaging in any occupation whatsoever for remuneration of profit.' As thus defined the phrase 'wholly disabled' or 'totally disabled' is not absolute in meaning, that is, free from qualification or restriction. A person may be injured or diseased to such an extent as to prevent him from engaging in an occupation for remuneration or profit, but which would not prevent an occasional subsidiary employment or avocation.

"The term 'occupation' is itself a relative one, having relation to one's capabilities. A person whose occupation is that of merchant, or mechanic, or day laborer, who becomes 'wholly disabled' from engaging in his occupation, might nevertheless, after years of preparatory study and mental training follow some gainful ocupation, but until that end is accomplished and the insured is receiving profits or remuneration from his new avocation the insurance company carrying the insurance for the injured person would not under a clause like the one included in the policies in this case be justified in refusing the monthly benefit payments on the possibility of the insured ultimately obtaining profits from following a different occupation from that which he was engaged in, when the policy was written. Nor would it be justified in discontinuing the monthly disability payments so soon as the injured person recovers partially from his injuries enough to enable him to occasionally render some small service related or unrelated to his occupation.

"The question, however, of the application of the disability clause in any case is under proper pleadings one of fact and not of law. See Equitable Life Assurance Society of the U. S. v. Wiggins, 115 Fla. 136, 155 South. Rep. 527."

When considering each of the cited cases in light of the contention made, it cannot be said that the challenged in-

structions were clearly erroneous so as to make it our duty under the law to award a new trial. The instruction on review here must be considered under the law as an entirety and not as single instructions. Applying the established rule to the charge as an entirety reversible error has been made to appear.

Three physicians were offered by the defendant and testified that the plaintiff was in good health; and that during the period of time in which the plaintiff was alleged to have been disabled he played golf two or three times each week, and on each occasion played 18 holes. A moving picture film of the plaintiff playing golf in Coral Gables was admitted into evidence over the plaintiff's objection and it is contended that this ruling was prejudicial and erroneous.

Our answer to the contention that the verdict is not supported by the evidence appearing in the record is that the verdict has been sustained by the trial court and affirmed on appeal by the circuit court. This Court is committed to the rule that it will not review on certiorari conflicts and disputes in the testimony. See Blue Belt Fertilizer Co. v. Pullen, 125 Fla. 164, 169 So. 615; Robbins Holding Co. v. Morris, 131 Fla. 205, 179 So. 404; Metropolitan Life Ins. Co. v. Poole, 147 Fla. 686, 3 So. (2nd) 386; Farnham v. Caldwell, 141 Fla. 416, 193 So. 286.

It is next contended that the trial court did not or failed to observe the essential requirements of the law by admitting into evidence, over the objection of counsel for the plaintiff, for consideration of the jury moving picture films made of the plaintiff while playing golf on one of the courses near Miami. This Court has settled the law applicable to this contention. See Gulf Life Ins. Co. v. Stossel, 131 Fla. 268, 131 Fla. 127, 179 So. 163. We cannot say from the record that error resulted because of the admission into evidence of the challenged motion picture films.

The petition for a writ of certiorari should be denied.

BUFORD, C. J., and BROWN, J., concur.